**FILED**

# UNITED STATES DISTRICT COURT

### for the

Eastern District of California

FEB 1 5 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
|  | ) Case No. |
| Jesus Rodriguez and | ) |
| James Sykes | ) |
|  | ) |
|  | ) |

Case No. **2:18 - MJ - 043**  EFB

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  September 5 to December 14, 2017  in the county of  Sacramento  in the

Eastern  District of  California  , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| (1) 21 U.S.C. § 841(a)(1) | (1) Distribution of methamphetamine (Rodriguez only) |
| (2) 21 U.S.C. § 841(a)(1) | (2) Distribution of cocaine (Rodriguez only) |
| (3) 18 U.S.C. §§ 371, 922(a)(1)(A) | (3) Conspiracy to deal firearms without a license (both defendants) |
| (4) 18 U.S.C. § 922(a)(1)(A) | (4) Dealing firearms without a license (both defendants) |
| (5) 26 U.S.C. § 5861(d) | (5) Possession of an unregistered firearm (both defendants) |
| (6) 26 U.S.C. § 5861(i) | (6) Possession of an unserialized firearm (both defendants) |

This criminal complaint is based on these facts:

See Attached Affidavit of ATF Special Agent Matthew C. Ryckman.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Matthew C. Ryckman, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  2-15-2018

_____
*Judge's signature*

City and state:  Sacramento, California

Hon. Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT OF SPECIAL AGENT MATTHEW C. RYCKMAN IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**</u>

I, Matthew C. Ryckman, being duly sworn, depose and state the following:

<u>**Purpose**</u>

1.   This Affidavit is made in support of a criminal complaint and arrest warrant for:

        **a.  Jesus RODRIGUEZ**
        **b.  James SYKES**

For the following federal law violations:

| | |
|---|---|
| **COUNT 1:** | Distribution of methamphetamine, a Schedule II controlled substance [21 U.S.C. § 841(a)(1)] (*RODRIGUEZ only*) |
| **COUNT 2:** | Distribution of cocaine, a Schedule II controlled substance [21 U.S.C. § 841(a)(1)] (*RODRIGUEZ only*) |
| **COUNT 3:** | Conspiracy to deal firearms without a license [18 U.S.C. §§ 371, 922(a)(1)(A)] |
| **COUNT 4:** | Dealing firearms without a license [18 U.S.C. § 922(a)(1)(A)] |
| **COUNT 5:** | Possession of an unregistered firearm [26 U.S.C. § 5861(d)] |
| **COUNT 6:** | Possession of an unserialized firearm [26 U.S.C. § 5861(i)] |

<u>**Affiant's Background and Experience**</u>

2.   I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I have been an ATF Special Agent since August 2016. I have received training in federal firearms laws and regulations at the ATF National Academy and Federal Law Enforcement Training Center (FLETC). Prior to becoming an ATF Special Agent, I served as a Police Officer with the Baltimore Police Department (Maryland) for approximately nine years. My assignments there included working as a Detective and Task Force Officer (TFO) with the High Intensity Drug Trafficking Area (HIDTA) Drug Enforcement Agency (DEA), Group 54.

3.   I have participated in all aspects of criminal investigations during my 9-year career in law enforcement, including managing confidential informants; surveillance; undercover operations as the undercover operative; conducting controlled purchases of firearms and/or drugs; interviewing suspects; and executing search and arrest warrants. I have been the affiant of numerous affidavits for search warrants, arrest warrants, and the co-affiant on a Title III wiretap investigation. I have been the affiant of numerous affidavits for search warrants relating to firearms offenses.

4.   As a result of my training and experience with the ATF and the Baltimore Police Department, I am familiar with the federal laws pertaining to firearms- and narcotics-trafficking. I know that it is unlawful under Title 18 of the United States Code to traffic in firearms without a license and to conspire to do the same. I also know that it is unlawful under Title 26 of the United States Code to possess a firearm that is not registered in the National Firearms Registration and Transfer

Record, and to possess an unserialized firearm. Last, I know that it is unlawful under Title 21 of the United States Code to distribute and to possess with intent to distribute controlled substances.

5.     This Affidavit is made in support of a criminal complaint and arrest warrant charging Jesus **RODRIGUEZ** with: (i) distribution of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); (ii) distribution of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); (iii) conspiracy to deal firearms without a license, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A); (iv) dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A); (v) possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d); and (vi) possession of an unserialized firearm, in violation of 26 U.S.C. § 5861(i).

6.     This Affidavit is also made in support of a criminal complaint and arrest warrant charging James **SYKES** with: (i) conspiracy to deal firearms without a license, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A); (ii) dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A); (iii) possessing an unregistered firearm, in violation of 26 U.S.C. § 5861(d); and (iv) possessing an unserialized firearm, in violation of 26 U.S.C. § 5861(i).

7.     The information contained in this Affidavit is based on my review of the reports and files in this case, conversations with other law enforcement personnel involved in this case, and my own personal knowledge. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included every fact known to me about this case. Rather, I have set forth only those facts I believe are necessary to support probable cause for a criminal complaint.

### Statement of Probable Cause

8.     In late-2017, the United States government, and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), was investigation a large-scale firearms manufacturing and trafficking ring that included numerous individuals, including Jesus RODRIGUEZ and James SYKES. At no time relevant to this investigation did RODRIGUEZ or SYKES have a license to sell or manufacture firearms. And at no time relevant to this investigation did RODRIGUEZ or SYKES have an application to sell or manufacture firearms pending with the Secretary of the Treasury. SYKES is a convicted felon, and thus, he is prohibited from possessing firearms and ammunition. Last, all of the firearms transactions discussed herein were audio and/or video recorded by ATF.

### Controlled Purchase #1 – September 5, 2017
### (James SYKES; Jesus RODRIGUEZ)

9.     On September 5, 2017, a confidential informant, acting under the direction of ATF Special Agent Matthew Ryckman, purchased a firearm from James SYKES, who was identified at the time as "JJ." The controlled purchase occurred in the parking lot of Lord Tony's Artistic Fingers Barbershop located on Mack Road in Sacramento, in the Eastern District of California.

10.     The CI was in contact with SYKES via recorded phone calls and text messages prior to the controlled purchase. The CI originally agreed to purchase a Glock handgun from SYKES for $700. At around 1:42 p.m., SYKES called the CI and said that he was at the agreed-upon meet

location. The CI observed a teal Infiniti arrive and park in front of the business (CA license plates 7YYB357). A records check showed that the Infiniti is registered to "Jesus RODRIGUEZ" at 7572 Burgoyne Lane, Sacramento, California 95823.

11.     A Sergeant with the Sacramento Police Department was able to see the man driving the Infiniti, and after looking at Jesus RODRIGUEZ's Department of Motor Vehicles (DMV) photo, confirmed that RODRIGUEZ was, in fact, the man driving the Infiniti.

12.     The CI then traveled to the parking lot and parked by the Infiniti. SYKES got out of the car and approached the CI's vehicle. SYKES was carrying a black duffle bag, which he placed in the back seat of the CI's car. At that point, SYKES got into the front passenger seat of the CI's car. The CI looked in the duffle bag and saw a firearm.

13.     The CI asked the price for the rifle and SYKES responded, "The nigga really wanted 11 for that mother fucker but if I was going to make a profit it's going to be 12." SYKES then stated, "I'm about to go to Utah though and get some Dracos." The CI paid SYKES $1,200 for the rifle. SYKES again stated, "I'm about to get some Dracos though, the mini ones," referring to the mini Draco AK-47-style pistol. The CI agreed to purchase the Dracos SYKES said he would bring back to California. After that, SYKES got out of the CI's car, he got back in the Infiniti, and left the area.

14.     The rifle that the CI purchased from SYKES on September 5, 2017 is an Anderson Model AM-15 multi-caliber rifle (s/n: 15201808). The gun is pictured below.



### Controlled Purchase #2 – September 9, 2017
### (James SYKES; Jesus RODRIGUEZ)

15.     On September 9, 2017, an ATF undercover agent (the UC), purchased three firearms from James SYKES and Jesus RODRIGUEZ. The transactions occurred in the parking lot for Lord Tony's Artistic Fingers Barbershop on Mack Road in Sacramento, and at the Carl's Jr. at 2615 Broadway, also in Sacramento.

16.     Prior to the controlled purchase, the CI was in contact with SYKES via recorded phone calls and text messages. The CI arranged for the UC to buy the firearms from SYKES and

RODRIGUEZ. The UC arrived at the parking lot and parked in the area. At 2:34 p.m., the UC saw Rodriguez arrive in his 2007 Infiniti (CA plates 7YYB357). RODRIGUEZ and SYKES were both in the car.

17.     The UC got out of his car and greeted both men. SYKES suggested to RODRIGUEZ that he should move the Infiniti next to the UC's car. RODRIGUEZ then moved his car next to the driver's side of the UC's car. After he did that, SYKES opened the Infiniti's rear passenger side door and removed the firearms described below, which were covered in a white towel.



- Norinco SKS 7.62x39 rifle (s/n: 8153592) with a magazine and a second additional magazine.
- American Tactical Omni Hybrid Multi-Cal rifle (s/n: NS089104) with a magazine.

18.     SYKES then placed an additional magazine for the SKS rifle in the UC's trunk. The UC asked if the firearms were "clean" and SYKES said that he had the bill of sales for both rifles. The UC asked SYKES how much for the firearms, and SYKES replied "13" (referring to $1,300). RODRIGUEZ clarified that the cost was for each firearm, for a total purchase price of $2,600.



19.     The UC counted and paid SYKES $2,600 for the firearms. The UC also included an extra $200 for SYKES and RODRIGUEZ for facilitating the transaction. SKYES give RODRIGUEZ $100 from this amount.

20.     RODRIGUEZ said that he had, and was selling, heroin and he gave the UC his cellular telephone number. RODRIGUEZ told the UC that his brother in Reno, Nevada had access to ecstasy and promethazine, and he said that he had methamphetamine, cocaine, and heroin for sale. RODRIGUEZ told the UC that he would bring a sample.

21.     The UC asked RODRIGUEZ what additional firearms he and SYKES had access to, or if they could get short-barreled rifles. RODRIGUEZ said, "that's our specialty." RODRIGUEZ advised the UC that he would have three short-barreled rifles by the end of the week. All parties then left the location.

22.     At around 3:12 p.m., **RODRIGUEZ** called the UC and said that he had another firearm for sale. The UC and **RODRIGUEZ** agreed to meet at the Carl's Jr. on Broadway in Sacramento. Surveillance units responded to area and set up surveillance at the parking lot.

23.     Special Agent Ryckman and Detective Amanda Worm saw the Infiniti arrive and park. The UC got out of his car and walked over to the Infiniti's driver's-side window. The UC purchased a Colt Model .45 automatic pistol (s/n: C112708) from **RODRIGUEZ** for $700. The UC and **RODRIGUEZ** discussed future firearms sales. The UC returned to his vehicle and both men left the parking lot.

24.     A subsequent ballistics test on this weapon showed that it had been used in multiple crimes and a homicide in Reno, Nevada.

25.     The three firearms purchased on September 9, 2017 are pictured below.



26.     TFO Oliver conducted a search through law enforcement databases and identified SYKES based on a demographics query and surveillance photo comparisons. The CI and UC were able confirm that SYKES was the individual known to them as "JJ."

/ / /

/ / /

## Controlled Purchase #3 – September 12, 2017
### (James SYKES; Jesus RODRIGUEZ)

27.    On September 12, a second CI purchased a firearm from SYKES and RODRIGUEZ. The transaction occurred in the parking lot for Lord Tony's Artistic Fingers Barbershop on Mack Road in Sacramento, California.

28.    CI #15561 (the CI referenced above, CI-1 hereafter) arranged an introduction between CI #1792 (CI-2) and SYKES and RODRIGUEZ, with the intention of having CI-2 purchase the firearm on that day. Prior to the controlled purchase, CI-1 was in contact with SYKES via recorded phone calls and text messages.

29.    At around 1:44 p.m., CI-2 arrived at the parking lot and parked in the front of the business. A few minutes later, CI-1 came out of the business with RODRIGUEZ and introduced RODRIGEZ to CI-2. RODRIGUEZ asked where he should park and he agreed to park by the UC's car. RODRIGUEZ walked to his Infiniti and repositioned his car next to the driver's-side of the UC's vehicle.

30.    RODRIGUEZ opened the rear door of his Infiniti and displayed the firearm discussed below, which was situated in a Century Arms firearms box. RODRIGUEZ advised that one of the magazines was loaded and that it came with a second magazine. CI-2 asked, "how much I owe you," and RODRIGUEZ said, "14," meaning $1,400.

31.    CI-2 counted $1,400 and gave RODRIGUEZ the money for the firearm. RODRIGUEZ handed CI-2 the firearm and CI-2 put the firearm on the back seat of the UC's car. CI-2 and RODRIGUEZ talked briefly about future controlled substance transactions.

32.    The firearm that CI-2 and the UC purchased on September 12, 2017 was a Romarm / Cugir Draco 7.62 x 39mm caliber pistol (s/n: DA907115), loaded with a magazine containing 27 live 7.62 caliber rounds and a second empty magazine. The firearm is pictured below:



6

**Controlled Purchase #4 – September 25, 2017**
**(Jesus RODRIGUEZ)**

33.     On September 25, 2017, the UC purchased one unmarked/unserialized AR-15-type rifle, one Romarm / Cugir WASR-10 rifle (s/n: A1-24143-14), and roughly 3.95 grams of cocaine from RODRIGUEZ. This transaction was conducted in the parking lot of the Burlington Coat Factory located at 3671 North Freeway Boulevard, Sacramento, California.

34.     At around 12:21 p.m., the UC and surveillance members saw a white Honda Civic arrive at the agreed-upon meet location with RODRIGUEZ as the driver. The UC greeted RODRIGUEZ, who said that he had sold his Infiniti. RODRIGUEZ opened the trunk of the Honda Civic and removed a brown bag containing the firearms.



35.     RODRIGUEZ told the UC that he had brought a sample of "soft" (referring to cocaine). Both the UC and RODRIGUEZ got into the UC's car to exchange payments for the firearms and to inspect the cocaine.



36.     RODRIGUEZ told the UC that he typically sells cocaine for $900 per ounce. The UC then counted and paid RODRIGUEZ $2,600 for the firearms. RODRIGUEZ said that the short-barrel AR-style rifles that they had discussed previously would be arriving the following week. RODRIGUEZ also told the UC that he could convert firearms to be fully automatic.

37.    The guns and drugs that the UC purchased from RODRIGUEZ on September 25, 2017, are pictured below:



### Controlled Purchase #5 – October 25, 2017
### (Jesus RODRIGUEZ)

38.    On October 25, 2017, the UC purchased one Arsenal SLR106CR rifle (s/n: AB470561), one Ruger AR-556 rifle (s/n: 854-06127), one Zastava PAP M92PV pistol (s/n: M92PV036095), one Colt M4 Carbine rifle (s/n: BP091303), one Smith & Wesson model 10-8 revolver (s/n: 8D07150), and one Glock 21 pistol (s/n: XHL705) from RODRIGUEZ. This transaction took place in the Burlington Coat Factory parking lot on North Freeway Boulevard in Sacramento.

39.    At around 12:29 p.m., the UC and surveillance members saw a black Honda Accord arrive at the agreed-upon meet location. The Honda had a California license plate (8AWC327). RODRIGUEZ was the passenger and an unknown Hispanic male was driving. The UC greeted RODRIGUEZ, who opened the Honda's trunk, removed a blanket, and put the blanket in the UC's car. The UC also removed a black rifle bag from the Honda Accord and transferred it to the his [the UC's] car.



40.　The UC then removed the blanket and inspected the firearms as RODRIGEUZ returned to the Honda Accord. Upon returning, RODRIGUEZ said that he had a revolver for sale. The UC told RODRIGUEZ to place the revolver in the trunk of the UC's car.



41.　RODRIGUEZ and the UC both got into the UC's car. When they did, RODRIGUEZ removed a Glock pistol from his pocket to give to the UC. The UC asked how much RODRIGUEZ wanted for it and RODRIGUEZ asked the UC to make an offer. The UC told RODRIGUEZ that he would give RODRIGUEZ whatever is leftover in the funds.

42.　The UC counted and paid RODRIGUEZ $6,200. The UC gave RODRIGUEZ an extra $200 for facilitating the transaction. The UC offered RODRIGUEZ $600 or $700 for the Glock pistol. RODRIGUEZ asked for $700, which the UC agreed on and gave to RODRIGUEZ.



43.　The UC asked about the person who was manufacturing the AR rifles and RODRIGUEZ told the UC that they no longer had that person's number. RODRIGUEZ told the UC that he had another shipment of short-barreled rifles that would be arriving shortly.

44.　The UC purchased the following items from RODRIGUEZ on October 25, 2017, for a total of $6,900:

- Smith & Wesson 38 Special revolver (s/n: 8D07150), loaded with 6 live 38 special rounds.
- Glock 21 .45 caliber pistol (s/n: XHL705), with one mag loaded with 9 live .45 caliber rounds.
- Arsenal Rifle Model SLR 106CR (s/n: AB470561).
- Ruger AR-556 rifle (s/n: 85406127).
- ZASTAVA M92PV AK-47 style pistol (s/n: M92PV036095), loaded with one magazine containing 24 live rounds.
- Colt M4 Carbine .22LR (s/n: BP091303), with a magazine containing 27 live rounds, and an attached silencer.



45.    Special Agent Ryckman conducted a stolen records query of the firearms and found that the Colt M4 Carbine (s/n: BP091303), with the attached silencer, was reported stolen out of Yuba County, California on February 18, 2016.

### Controlled Purchase #6 – November 6, 2017
### (Jesus RODRIGUEZ)

46.    On October 25, 2017, the UC purchased one SKS rifle (s/n: FK2107), one Anderson Manufacturing AM-15 rifle (s/n: 17008180), one Bushmaster XM15-E2S (s/n: L170721), one Anderson Manufacturing AM-15 rifle (s/n: 15210960), one Anderson Manufacturing AM-15 rifle

(s/n: 14165828), and one Radical Firearms RFS-15 (s/n: RFS06002) from RODRIGUEZ. This transaction was conducted in the area of 2248 Grand Avenue, Sacramento, California.

47.    At around 1:12 p.m., the UC saw a silver Infiniti sedan (California license plate 7ZIU237) arrive behind the UC's car. RODRIGUEZ got out of the Infiniti and walked to the passenger side of the UC's car. After greeting the UC, RODRIGUEZ told the UC that they needed to drive "around the corner." RODRIGUEZ continued to say that he felt a van in the area was suspicious. The UC drove his car to the area by 3713 Astoria Street.

48.    RODRIGEUZ told the UC to park behind a black Infiniti SUV (California license plate 6EHY616). The UC saw that there was another driver in the black Infiniti. RODRIGUEZ removed a black bag from the Infiniti and gave it to the UC to take back to the UC's car.



49.    RODRIGUEZ brought an additional firearm that was wrapped in a hooded sweatshirt. Both RODRIGUEZ and the UC opened the black bag to ensure there were five firearms in the bag.



50.     RODRIGUEZ and the UC both got into the UC's car and the UC paid RODRIGUEZ $9,700 for the firearms. The UC gave RODRIGUEZ an additional $300 for facilitating the transaction.

51.     The UC purchased the following firearms from RODRIGUEZ on November 6, 2017, for a total of $9,700:

   a.   SKS rifle (s/n: FK2107)
   b.   Anderson Manufacturing AM-15 rifle (s/n: 17008180)
   c.   Bushmaster XM15-E2S (s/n: L170721)
   d.   Anderson Manufacturing AM-15 rifle (s/n: 15210960)
   e.   Anderson Manufacturing AM-15 rifle (s/n: 14165828)
   f.   Radical Firearms RFS-15 (s/n: RFS06002)



### Controlled Purchase #7 – November 16, 2017
### (Jesus RODRIGUEZ)

52.     On November 16, 2017, the UC purchased 460.71 grams of suspected methamphetamine from RODRIGUEZ. This transaction took place in the 1400 block of I Street in Sacramento.

53.     At around 2:44 p.m., Special Agent Ryckman saw RODRIGUEZ arrive in green Mazda with California license plates (7MQR741). A records check showed that this car is registered to "Rosalba RODRIGUEZ, 7572 Burgoyne Sacramento, CA 95823". RODRIGUEZ got out of the car carrying a pink Victoria Secret bag. He approached the UC and handed the UC the bag.

54.     After the UC verified that the bag had the suspected methamphetamine within, he handed RODRIGUEZ $2,900 as the agreed-upon purchase price. The UC gave RODRIGUEZ an additional $100 for facilitating the transaction.

55.     RODRIGUEZ told the UC that he would have five firearms available "tomorrow." The UC asked if the fully automatic firearms were available and RODRIGUEZ said that they were not ready yet. However, RODRIGUEZ explained that he had seen pictures and videos of the firearms. The UC agreed to purchase all five firearms that RODRIGUEZ had available. RODRIGUEZ got into the front passenger seat of the Mazda and the vehicle drove away.

56.     Later, the UC weighed the clear bag with the suspected methamphetamine. It weighed 460.7 grams. Special Agent Ryckman field tested the substance, and it tested positive for the presence of methamphetamine.



### Controlled Purchase #8 – November 20, 2017
### (Jesus RODRIGUEZ; James SYKES)

57.     On November 20, 2017, the UC purchased two firearms from RODRIGUEZ and SYKES. The transactions took place in the Hobby Lobby parking lot on Arden Way in Sacramento. Prior to the transaction, the UC communicated with RODRIGUEZ and SYKES by telephone. All calls were recorded and are available for review.

58.     At around 1:38 p.m., the UC parked in the parking lot. About an hour later, at 2:37 p.m., Special Agent Ryckman saw a silver Infiniti with California license plate 7ZIU237 enter the lot and drive through the rows of parking. The Infiniti dove to the UC's car and parked adjacent to the driver's side.

13

59.     RODRIGUEZ got out of the Infiniti's driver's-side door and he greeted the UC. RODRIGUEZ then moved to the Infiniti's rear passenger door, where he removed a black bag, which he placed the bag in the trunk of the Infiniti. RODRIGUEZ and the UC stood at the trunk of the vehicle as RODRIGUEZ manipulated the bag and object(s) in the trunk, showing them to the UC. RODRIGUEZ handed the bag to the UC, who put the bag in the rear compartment of his [the UC's] car. There was a visible butt stock for a firearm protruding from the bag.



60.     The UC purchased the firearms from RODRIGUEZ for $3,400. RODRIGUEZ and the UC talked for a few minutes and then the UC got into his car and left the lot. RODRIGUEZ got into his Infiniti, now entering the front passenger seat, and he too left the area. Special Agent Ryckman called the UC, who advised that there was a black male in the Infiniti but whom the UC was unable to identify at the time.

61.     Later that day, James SYKES contacted the UC by phone. During the conversation, the UC asked SYKES if he was in the Infiniti during the transaction in the Hobby Lobby parking lot. SYKES confirmed that he was with RODRIGUEZ. SYKES also mentioned that he had more firearms for sale.

62.     The UC purchased the following firearms from RODRIGUEZ on November 20, 2017.

- Olympic Arms P.C.R 00 .223 caliber rifle (s/n: JJ4475), with one magazine.
- Century Arms AK-63D 7.62X39mm caliber rifle (s/n: 63DPM00805), with one magazine.



63.     On November 22, 2017, the UC purchased one Sturm Ruger & Co. Mini 14 rifle, one unmarked/unserialized AR-15-type pistol, one unmarked/unserialized AR-15-type pistol, one Stagarms Stag-15 rifle, one Century Arms 2008 Sporter rifle, and one Century Arms RAS 47 rifle from Jesus RODRIGUEZ, James SKYES, and Sergio GAETE-RIOG.

64.     The firearms purchase occurred at two locations. The first was out front of the Arbor Ridge Apartments at 4407 Oakhollow Drive in Sacramento. The second purchase occurred at the In-N-Out Burger at 130 Grass Valley Highway in Auburn, California.

65.     At around 9:11 p.m., the UC arrived at the first pre-arranged location and greeted RODRIGUEZ and SKYES, who were interacting with an unknown person by the white Nissan Altima. RODRIGUEZ opened the trunk of his Infiniti sedan (previously identified and reported) and removed a bundle wrapped in a blanket, then placed it in the trunk of the UC's car. Then, RODRIGUEZ removed a black rifle bag from the trunk of the Infiniti and placed it in the trunk of the UC's car. RODRIGUEZ told the UC that they were still waiting for the person who was coming from Reno, Nevada, with more firearms. SYKES referred to this person as "Sergio." RODRIGUEZ repeatedly tried to contact the person coming from Reno through his cell phone.

66.     For background purposes, RODRIGUEZ and SYKES were arrested on September 28, 2017 for firearms violations. While they were placed under arrest on that date, RODRIGUEZ and SYKES called an individual later identified as Sergio GAETE-RIOG. GAETE-RIOG arrived on scene operating a vehicle with a suspended driver's license and was in possession of a stolen firearm. GAETE-ROIG was arrested on the spot and the vehicle he was driving was towed. Special Agent Ryckman conducted a Facebook search of RODRIGUEZ's friends and identified an account for "Sergio Roig" with a photograph of GAETE-ROIG.

67.     Turning back to November 22, RODRIGUEZ advised the UC that they would meet the individual coming from Reno at the In-n-Out Burger in Auburn, California.

68.     At around 7:53 p.m., the UC, RODRIGUEZ, and SYKES arrived at the In-N-Out burger. The UC parked next to a black Infiniti SUV. Special Agent Ryckman parked in the lot and saw Sergio GAETE-ROIG walking to the parking lot from the restaurant. GAETE-ROIG walked over and stood in-between the UC's car and RODRIGUEZ's black Infiniti SUV and greeted the UC. The UC purchased the Stag arms Stag-15 rifle (s/n: Y420657) and the Century Arms 2008 Sporter rifle (s/n: VZ08PM-000527) from RODRIGUEZ, delivered by GAETE-ROIG.

69.     RODRIGUEZ said that he had a person who would be willing to manufacture fully automatic rifles. RODRIGUEZ showed the UC a video of a person shooting a fully automatic rifle. RODRIGUEZ told the UC that he [RODRIGUEZ] uses most of his money to purchase

cocaine, methamphetamine, and heroin.

70.  The UC purchased the following firearms from RODRIGUEZ, SYKES, and GAETE-ROIG on November 22, 2017 for a total of $9,800.

- Rifle bag containing a Sturm Ruger & Co. Mini 14 rifle (s/n: 184-40467), with a large capacity magazine and nine live .223 caliber rounds.
- Unmarked/unserialized black and silver AR-15 type pistol (s/n: none), with a magazine containing 10 live .223 caliber rounds.
- Unmarked/unserialized black and red AR-15 type pistol (s/n: none), with a magazine containing 10 live .223 caliber rounds.
- Century Arms 2008 Sporter rifle (s/n: VZ08PM-000527), with a magazine containing seven live 7.62x39mm rounds.
- Stag arms Stag-15 rifle (s/n: Y420657), with a high capacity magazine.
- Century Arms RAS 47 rifle (s/n: RAS47000677), with a high capacity magazine.
- Century Arms 2008 Sporter rifle (s/n: VZ08PM-000527), with a magazine containing seven live 7.62x39mm rounds.
- Stag arms Stag-15 rifle (s/n: Y420657), with a high capacity magazine.
- Century Arms RAS 47 rifle (s/n: RAS47000677), with a high capacity magazine.



## Controlled Purchase #10 – November 30, 2017
## (Jesus RODRIGUEZ)

71.     On November 30, 2017, CI-2 purchased one unmarked/unserialized silver and black short-barrel rifle with a 90-round capacity drum magazine, one unmarked/unserialized black AR-15-style pistol with a high capacity magazine, one unmarked/unserialized black AR-15-style pistol with a flash suppressor and high capacity magazine, one unmarked/unserialized black and brown AR-15-style rifle, one Arsenal SLR-95 7.62X39mm caliber rifle (s/n: BA360616), and one AR-15 rifle (s/n: 11947), from RODRIGUEZ.  The controlled purchase took place in the parking lot at 1901 El Camino Avenue, Sacramento, California.

72.     Between November 28 and November 30, 2017, CI-1 communicated via text messages and/or phone calls with RODRIGUEZ.  The UC was originally in contact with RODRIGUEZ to purchase the firearms, but he later became unavailable.  CI-1 continued the communications and arranged for CI-2 to conduct the actual purchase.

73.     During the period of communication, RODRIGUEZ sent a photograph to CI-1 via text message, shown below.  RODRIGUEZ ultimately agreed to sell the firearms to CI-1 through CI-2 for $10,100.  RODRIGUEZ agreed to meet at the above described location on November 30, 2017, at 5:00 p.m.



74.     CI-2 traveled to the meet location followed by Special Agent Ryckman.  CI-2 parked and waited for RODRIGUEZ to arrive.  At around 5:43 p.m., an Infiniti with California license plate 7WUS125 arrived and marked adjacent to CI-2's car.

75.     RODRIGUEZ got out of the passenger's side of the Infiniti and walked over to CI-2's car. RODRIGUEZ opened the rear door of the Infiniti and removed a bundle wrapped in a sheet and carried it over to the passenger side of CI-2's car.  RODRIGUEZ returned to the Infiniti and got a duffle bag and carried it to CI-2's car.  RODRIGUEZ got into the car with the items.

76. The Infiniti left the lot and agents were able to see its license plates. Surveillance units followed the Infiniti until it arrived at the Arbor Ridge Apartments located on Oakhollow Drive in Sacramento. The Infiniti parked in front of apartment building "B 17-32." Special Agent Ryckman saw James SYKES and another unknown male standing by the apartment building.

77. RODRIGUEZ got out of the Infiniti and was greeted by SYKES, and the unknown male. RODRIGUEZ and the Infiniti's driver (unknown identity) walked into the apartment walk-way, and surveillance was then terminated.

78. CI-2 purchased the following firearms from RODRIGUEZ on November 30, 2017, for a total purchase price of $10,100.

- Unmarked/unserialized silver and black short-barrel rifle with a 90-round capacity drum magazine.
- Unmarked/unserialized black AR-15-style pistol with a high capacity magazine.
- Unmarked/unserialized black AR-15-style pistol with a flash suppressor and high capacity magazine.
- Unmarked/unserialized black and brown AR-15-style rifle with a high capacity magazine.
- Arsenal SLR-95 7.62X39mm caliber rifle (s/n: BA360616) with a high capacity magazine.
- AR Fifteen AR15 rifle (s/n: 11947) with a high capacity magazine.



Item #56

18

79.     ATF Special Agent Donn took possession of the firearms and turned them over to Special Agent Ryckman. Special Agent Ryckman examined item #56 (illustrated above), and observed that the firearm appeared to have a barrel less than sixteen inches, a violation of the National Firearms Act (NFA) under 26 U.S.C. § 5845. Special Agent Ryckman observed the firearm had a shoulder stock, was designed to be fired from the shoulder, and appeared to use the energy of the explosive in a fixed cartridge to fire a projectile through the rifled bore, classifying the firearm as a rifle. Special Agent Ryckman closed the bolt on the rifle and inserted a rod into the barrel. Special Agent Ryckman marked the inserted rod the forward most part of the muzzle of the barrel. Special Agent Ryckman then measured the rod length from the tip to the recorded mark and found same to be nine and a quarter inches 9.25", classifying the firearm as short-barrel rifle.

### Controlled Purchase #11 – December 6, 2017 (Jesus RODRIGUEZ)

80.     On December 6, 2017, the UC purchased an unmarked/unserialized AR-15-type pistol from RODRIGUEZ. This transaction occurred near RODRIGUEZ's residence, located at 4407 Oakhollow Drive, Apartment 19, Sacramento, California.

81.     Task Force Officer LeFLore saw RODRIGUEZ leaving his apartment carrying a purple backpack with a black shirt draped over an object protruding from the bag. RODRIGUEZ walked to an Infiniti (CA plate 7WUS125), which he had used previously during past controlled purchases.

82.     At around 4:08 p.m., the UC arrived to the pre-arranged met location. RODRIGUEZ pulled his vehicle behind the UC, who got out of his car and greeted RODRIGUEZ inside his Infiniti. The UC got into RODRIGUEZ's car on the passenger side. RODRIGUEZ had a purple backpack on his lap. RODRIGUEZ removed the AR-15-type pistol to show to the UC.



83.     The UC counted and paid RODRIGUEZ $1,800 for the firearm pictured below. RODRIGUEZ showed the UC a picture on his phone of two pistols that were then available. The UC told RODRIGUEZ to get the two pistols and that he would purchase them at a later date. The UC left the location and RODRIGUEZ returned back to his apartment.

/ / /

84.     The UC purchased firearm pictured below from RODRIGUEZ on December 6, 2017 for $1,800.

- Unmarked/unserialized AR-15 type pistol (s/n: none)



### Relevant Events on Takedown Day – December 14, 2017
### (4407 Hollow Drive, Apartment 19, Sacramento (Jesus RODRIGUEZ's residence)).

85.     On December 14, law enforcement personnel with the Sacramento Sheriff's Department, West Sacramento Police Department, California Department of Corrections, and the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives executed a search warrant at RODRIGUEZ's apartment at 4407 Oakhollow Drive, Apartment 19, Sacramento, California.

86.     Between December 7 and December 13, 2017, the UC and CI-1 communicated with RODRIGUEZ and SYKES by phone calls and text messages, in which they were coordinated additional firearms purchases.

87.     SYKES and RODRIGUEZ sent picture messages of firearms to the UC to sell, some of which are pictured below.  The UC agreed to purchase the firearms on December 14, 2017.



88.     ATF Task Force Officer Ryan Oliver obtained a search warrant for RODRIGUEZ's apartment.  The warrant was signed on December 12, 2017, by the Judge Steven White of the Superior Court of California, County of Sacramento.

89.     The West Sacramento Police Department Special Weapons and Tactics (SWAT) Team, initiated execution of the search warrant at approximately 7:00 a.m. SWAT team members were able to secure the following occupants without incident and then secured the apartment:

>     a.   Jesus RODRIGUEZ
>     b.   Precieus LAWSHA
>     c.   Yoselin LOPEZ-RENTERIA
>     d.   Kareen SYKES

90.     SSD and WSPD Detectives conducted a search of the residence.  Special Agent Ryckman advised the occupants of the search and seizure warrant and verbally advised all of the occupants of their *Miranda* rights.  Each individual verbally expressed their voluntary waiver of their rights. Special Agent Ryckman advised RODRIGUEZ that he was the focus of an investigation and that he had an arrest warrant and was under arrest.

91.     Special Agent Ryckman asked general questions as to who lived at the apartment and if there were any firearms at the location.  LOPEZ-RENTERIA said that the apartment was in her name and that she and RODRIGUEZ were in a domestic relationship.  RODRIGUEZ confirmed that they were in a relationship and that he lived at the apartment.  The firearms listed below were located and RODRIGUEZ said that he possessed the firearms in the apartment for protection after being shot in the leg in the past.  Several of the firearms in the apartment matched the pictured firearms that RODRIGUEZ and SYKES had offered for sale.

92.     The following firearms were located during the search of the residence.

*   Mauser C96 .30 caliber pistol (s/n: 406630) – Located in the utility closet.
*   Unmarked/Unserialized rifle – Located in the bedroom closet.
*   Unmarked/Unserialized AR-style pistol – Located in the bedroom closet.
*   Unmarked/Unserialized AR-style pistol – Located in the bedroom closet.
*   Anderson Manufacturing AM-15 Muilt-Cal pistol (s/n: 17125063) – Located in the bedroom closet.
*   Anderson Manufacturing AM-15 Muilt-Cal pistol (s/n: 17125064) – Located in the bedroom closet.

93.     A copy of the search and seizure warrant, along with a list of property seized was left at the residence on the dining room table with LOPEZ-RENTERIA.  SYKES later contacted the UC to sell the firearms.  SYKES was not at RODRIGUEZ's apartment while the search warrant was being executed and he was unaware of the situation.  SYKES responded to the apartment and then called the UC to inform the UC the location was searched by police.

94.     A California state arrest warrant was obtained for SYKES, who was located and arrested on December 21, 2017.

## Conclusion

95.     Based on the foregoing, I request that a criminal complaint and arrest warrant be issued for Jesus **RODRIGUEZ**, charging him with: (i) distribution of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); (ii) distribution of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); (iii) conspiracy to deal firearms without a license, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A); (iv) dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A); (v) possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d); and (vi) possession of an unserialized firearm, in violation of 26 U.S.C. § 5861(i).

96.     I also request that a criminal complaint and arrest warrant be issued for James **SYKES**, charging him with: (i) conspiracy to deal firearms without a license, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A); (ii) dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A); (iii) possessing an unregistered firearm, in violation of 26 U.S.C. § 5861(d); and (iv) possessing an unserialized firearm, in violation of 26 U.S.C. § 5861(i).

I declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Matthew C. Ryckman
Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to and subscribed before me on February 15, 2018.

Hon. Edmund F. Brennan
United States Magistrate Judge

Approved as to form:

Timothy H. Delgado
Assistant United States Attorney

## United States v. Jesus Rodriguez, et al.

### Penalties for Criminal Complaint

**DEFENDANT:**      1) Jesus RODRIGUEZ
                            2) James SYKES

### COUNT 1:            (Rodriguez only)

VIOLATION:        21 U.S.C. § 841(a)(1) – Distribution of methamphetamine, a Schedule II controlled substance.

PENALTIES:        -- A term of imprisonment for up to 20 years,
                            -- A fine of up to $1,000,000, or both fine and imprisonment,
                            -- A term of supervised release for not less than 3 years, up to life.

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### COUNT 2:            (Rodriguez only)

VIOLATION:        21 U.S.C. § 841(a)(1) – Distribution of cocaine, a Schedule II controlled substance.

PENALTIES:        -- A term of imprisonment for up to 20 years,
                            -- A fine of up to $1,000,000, or both fine and imprisonment,
                            -- A term of supervised release for not less than 3 years, up to life.

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### COUNT 3:            (Both Defendants)

VIOLATION:        18 U.S.C. §§ 371, 922(a)(1)(A) – Conspiracy to deal firearms without a license.

PENALTIES:        -- A term of imprisonment for up to 5 years,
                            -- A fine of up to $250,000, or both fine and imprisonment,
                            -- A term of supervised release for up to 3 years.

SPECIAL ASSESSMENT: $100 (mandatory on each count)

*(cont. below)*

**COUNT 4:**       **(Both Defendants)**

VIOLATION:      18 U.S.C. § 922(a)(1)(A) – Dealing firearms without a license

PENALTIES:      -- A term of imprisonment for up to 5 years,
                    -- A fine of up to $250,000, or both fine and imprisonment
                    -- A term of supervised release for up to 3 years.

SPECIAL ASSESSMENT: $100 (mandatory on each count)


**COUNT 5:**       **(Both Defendants)**

VIOLATION:      26 U.S.C. § 5861(d) – Possession of an unregistered firearm

PENALTIES:      -- A term of imprisonment for up to 10 years,
                    -- A fine of up to $10,000, or both fine and imprisonment
                    -- A term of supervised release for up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)


**COUNT 6:**       **(Both Defendants)**

VIOLATION:      26 U.S.C. § 5861(i) – Possession of an unserialized firearm

PENALTIES:      -- A term of imprisonment for up to 10 years,
                    -- A fine of up to $10,000, or both fine and imprisonment
                    -- A term of supervised release for up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)